# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JEFF NORTH,

        **Defendant.**

1:16-cr-309-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant Jeff North's ("North") Objections [67] ("Obj.") to Magistrate Judge Janet F. King's Final Report and Recommendation [63] ("R&R") on North's Motions to Suppress Evidence and Statements [20] [21] ("Motions to Suppress"). The Magistrate Judge found that (i) North did not have an expectation of privacy in the van that he was driving and in which a firearm was found and (ii) that statements made by North after he was arrested are not required to be suppressed. The Magistrate Judge recommends that North's Motions to Suppress be denied.

## I.    BACKGROUND

### A.    Facts

On March 22, 2015, Johnny Dansby ("Dansby") drove to a gas station on Hollowell Parkway to show Defendant North a van that he was selling. (Transcript

of May 18, 2017, Evidentiary Hearing [57] ("May 18th Tr.") at 9-13; Def. Exh. 5). North said he was interesting in buying the van but did not have sufficient cash for the purchase. (May 18th Tr. at 13-15). After making several phone calls, North told Dansby that North's uncle could help with the funds required. (Id. at 14-15). About an hour later, North said that he and Dansby should go to North's uncle's to get the remainder of the purchase price. (Id.). Dansby drove with North in the van, following directions given by North, arriving ultimately at a building that Dansby described as a "little bunkhouse thing," where rooms were rented to people. North's uncle did not reside at the bunkhouse. (Id. at 14-15, 19-21).

North and Dansby stayed at the bunkhouse for two to three hours but North was unable to get the funds needed for the car purchase. (Id. at 16-19). North told Dansby it was time to leave and, as they did, North went over to an old car and "did something." (Id. at 19). North asked if he could test drive the van to North's uncle's house. (Id. at 21-22). Believing that North intended to purchase the vehicle, Dansby decided to let North drive. (Id. at 20-22). North drove the van to an apartment building with boarded up windows that appeared mostly to be abandoned. (Id. at 21-22). North went inside one of the apartments. (Id. at 22). He came back out and told Dansby that a guy wanted him to come inside for the money. (Id.). Dansby refused and demanded that the keys to the van be returned

2

to him. (Id. at 22, 26-27). North then demanded that Dansby turn over his wallet, repeating the demand at least once more before pulling a firearm and telling Dansby, "[n]ow get out the van." (Id. at 22, 27).

Dansby tried to explain that North needed a power of attorney for the vehicle. (Id. at 22, 24-26). North responded "[I] don't give a f[ ] about you," and then shot Dansby. (Id. at 22-23, 28). Dansby got out of the van and circled around in front of it to avoid getting shot again. North fired another shot at Dansby. (Id.). Dansby, ducking behind the vehicle, ran to the apartment complex exit. (Id. at 23, 29-30). North followed Dansby in the van and then North turned right onto Joseph E. Boone Boulevard ("Boone"), at the apartment complex exit. (Id. at 29-30).

Atlanta Police Officer Willie Williams was patrolling in his marked police car in the area and saw a black van westbound on Boone and, at the same time, saw Dansby in a bloody white t-shirt, waving him down. (Transcript of January 12, 2017, Evidentiary Hearing [60] ("January 12th Tr.") at 5-7, 15; May 18th Tr. at 23, 30). Dansby pointed to his van driving off—the same van Officer Williams had just seen—and Dansby told Officer Williams that the man who shot him was driving the van that he had taken from Dansby. (January 12th Tr. at 7, 16-17). The van was about 1,000 feet away, and the van was the only vehicle on the road. (Id. at 7-8).

Officer Williams called Grady EMS to assist Dansby and then immediately followed the van. (Id. at 8, 17-18; May 18th Tr. at 31). Officer Williams activated his blue lights and siren. (Id.) North stopped the van. (January 12th Tr. at 8, 18). Officer Williams got out of his car and, aware of the prior shooting, had his gun in his hand in a low ready position. (Id. at 8-9, 19, 21). Officer Williams told North to lie on the ground, to which North responded: "What the f[ ] did you pull me over for? I did not do anything." (Id. at 9, 19; May 18th Tr. at 6). Officer Williams repeated his instruction and this time North complied, and was restrained. (January 12th Tr. 9, 20; May 18th Tr. at 6).

Officer Williams told North that he was being detained as a suspect in a crime. (January 12th Tr. at 21). North did not make any further statements and did not claim that the van belonged to him. (Id. at 10, 21-22). Officer Williams took North to where he had left Dansby, but, by that time, Dansby had been transported to the hospital. (Id. at 10). Officer Williams and North returned to where the van had been pulled over. Officer Williams searched the van for evidence of the shooting, while North remained in the car. (Id. at 11-12). Officer Williams found in the van a loaded .22 caliber firearm and two spent shell casings. (Id.). Officer Williams also found Dansby's wallet with his identification in it. (Id. at 12-13, 22-23).

4

B.  Procedural History

North moved to suppress the stop, and search, of the van, the seizure of the gun and shell casings, and the statement he made to Officer Williams when he was ordered to get out of the vehicle and get on the ground.  North contends that he had a reasonable expectation of privacy in the van when it was stopped, detained, and the interior of it searched.  North also contends Officer Williams lacked reasonable suspicion to stop the van, that the warrantless search of it was unlawful, and that any statements he made are inadmissible fruits of an illegal stop and detention, or were involuntary because he was not read his Miranda rights.  (R&R at 1-2).

After conducting an evidentiary hearing on North's Motions to Suppress on January 12, 2017, and May 18, 2017, the Magistrate Judge found that North lacked a reasonable expectation of privacy in the van that he had stolen from Dansby.  Even if North had grounds to challenge the stop of the van or his detention and search of the van, the Magistrate Judge found that Officer Williams had reasonable suspicion to conduct the stop, to detain North, and to conduct a warrantless search of the van for the gun involved in the shooting, because Dansby told Officer Williams that he was shot by North in the van and that the van was stolen from him.  Finally, the Magistrate Judge found that the statement that North made when

he was stopped was not made during a custodial interrogation, but a statement made spontaneously and offered voluntarily.

North asserts four objections to the R&R. First, North objects to the Magistrate Judge's conclusion that he did not have a reasonable expectation of privacy in the van he was driving. (Obj. at 1). Second, North objects to the Magistrate Judge's conclusion that Officer Williams had reasonable suspicion to stop the van. (Obj. at 2). Third, North objects to the Magistrate Judge's conclusion that Officer Williams' decision to conduct a search of the van was supported by evidence because the evidence does not support there was a sufficient basis for a warrantless search. (Id.). Fourth, North objects to the Magistrate Judge's conclusion that the statement North made when he was stopped by Officer Williams was admissible. (Id.).

## II. STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."

28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted). With respect to those findings and recommendations to which a party has not asserted objections, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Court reviews *de novo* those portions of the R&R to which North asserts a specific objection. North also states that he "reiterates, relies on, and incorporates by reference all of his factual allegations and legal conclusions in his previously filed motions and supporting briefs." (Obj. at 1). North also generally "objects to both the factual and legal conclusions made in the R&R." (Id.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). Accordingly, the Court reviews for plain error those portions of the R&R for which a specific objection was not asserted.

## III. DISCUSSION

### A. Stop and search of the van (First, Second, and Third Objections)

#### 1. Stop of the van and detention of North

It is well-established that "[a] traffic stop, which 'is a seizure within the meaning of the Fourth Amendment,'. . . 'is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009). If law enforcement agents have reasonable, articulable suspicion based on objective facts that an individual has engaged in, or is about to engage in, criminal activity, then the officer may stop the person suspected, without a warrant. United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007). See also United States v. Mickell, 102 F.3d 470, 474-75 (11th Cir. 1996); United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995).

Whether a police officer has reasonable suspicion to detain is determined based on "the totality of the circumstances known to the detaining officer[] at the time of the detention." United States v. Smith, 201 F.3d 1317, 1323 (11th Cir. 2000). The Court views all of the circumstances "in the light of the officer['s] special training and experience." Id.

Officer Williams had reasonable suspicion to stop the van and North who was driving it. Officer Williams saw Dansby on the side of the road, in a bloody shirt, waving him down. Dansby told Officer Williams that a man shot him and stole his van. Dansby pointed at the van, which was about 1,000 feet away and the only vehicle on the road. Officer Williams, based on his experience and training, concluded, based on the totality of the circumstances, that the van which he could see, was being driven by a man who had stolen it and who, before stealing it, shot the man from whom it was stolen. Officer Williams had reasonable, if not compelling, articulable suspicion that the driver of the van had just engaged in criminal activity, justifying the stop of the van and the man driving it. See United States v. McCall, 563 F. App'x 696 (11th Cir. 2014) (911 report of driver being robbed of his car keys and cell phone and belief his rental car was stolen, along with description of vehicle and occupants, sufficient for police office to have reasonable suspicion to stop the car); United States v. Darling, 619 F. App'x 877 (11th Cir. 2015) (officer had reasonable suspicion that defendant was involved in criminal activity to justify stopping car in which defendant was passenger, based on 911 report of armed man, corroborated by timing, location, direction of travel and description of car and occupants; officers also had probable cause to search car for gun where no gun was found on defendant's person after pat-down).

Having reviewed *de novo* the finding and conclusion in the R&R regarding the stop of the van, the Court overrules North's objection to the stop of the van and the detention of North.

    2.    <u>Search of the van</u>

In evaluating if an individual has standing to challenge a search, a court must determine "whether the individual maintains a legitimate expectation of privacy in the object of the search." <u>United States v. Hastamorir</u>, 881 F.2d 1551, 1559 (11th Cir. 2000). This determination requires a two-step process: First, did the individual challenging the search manifest a "subjective expectation of privacy" in what was searched. Second, does society recognize the claimed expectation of privacy as legitimate. It is axiomatic that a "person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." <u>Rakas v. Illinois</u>, 439 U.S. 128, 134 (1978); <u>see</u> <u>United States v. Brown</u>, 743 F.2d 1505, 1506 (11th Cir. 1984). Put another way, for a defendant to claim a violation of the Fourth Amendment as a result of a search, he "must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." <u>United States v. Chaves</u>, 169 F.3d 687, 690 (11th Cir. 1999).

North did not have a reasonable expectation of privacy permitting him to challenge the search of the van he took from Dansby after he shot him. Courts have consistently held that a defendant does not have a reasonable expectation of privacy in a vehicle the defendant has stolen. United States v. Knight, 336 F. App'x 900, 903 (11th Cir. 2009); see also United States v. White, 504 F. App'x 168, 172 (3d Cir. 2012); United States v. Stamper, 91 F. App'x 445, 455-56 (6th Cir. 2004); United States v. Lanford, 838 F.2d 1351, 1353 (5th Cir. 1988). The evidence here clearly establishes that North physically took the van from Dansby, after having shot and threatened him. Dansby pointed out his van on Boone road and said the man driving it had shot him and taken the van. The facts are that the van that was searched was not owned by North and the only reason he had possession of it was because it was taken at gunpoint from Dansby. North did not have any expectation of privacy, no less a reasonable one, and thus North is not entitled to challenge the search of the van or the seizure of property found in it, including his weapon and the two spent shells.

Even if North had standing to challenge the search—which he did not—the search did not violate his Fourth Amendment rights. The Fourth Amendment ordinarily requires a police officer to obtain a warrant before conducting a search. California v. Carney, 471 U.S. 386 (1985). There are various accepted exceptions

to this general rule. One is a search incident to arrest to investigate crimes for which a person detained is suspected of committing. Another is the search of a car or vehicle for contraband and evidence of crimes suspected of being committed, because if a "car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). See also United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006). The United States Supreme Court held not long ago in Arizona v. Gant, 556 U.S. 332 (2009), that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Id. at 343 (citing Thornton v. United States, 541 U.S. 615, 632 (2004)).

In this case, Officer Williams had probable cause to believe that there was evidence of North's criminal conduct in the van. Dansby refused to go into the apartment building to meet with some unspecified person who had money to help North buy the van, and demanded North to give him the keys. North refused and demanded that Dansby give him his wallet. North pulled out a gun, told Dansby to get out of the van and, when Dansby told North that he did not have the power of attorney he needed to transfer the van, North shot him. Dansby got out of the

vehicle and tried to take a position to avoid being shot again.  North fired a second shot at Dansby as North drove away in the van.

Officer Williams, who was driving past the apartment complex, saw Dansby in a bloody white t-shirt, trying to wave him down.  Dansby stated that his van had been taken by North who had shot him.  Dansby pointed to the van down the road which was visible to him and Officer Williams.  Officer Williams got in his police car, turned on his blue lights and siren, and eventually caused North to stop.

Considering the danger of the stop when North exited the vehicle, Officer Williams, when he exited his police car, held his gun in the low ready position.  North ultimately complied with Officer Williams' order for him to lie on the ground.  North was handcuffed, put into Officer Williams' police car, and driven to where Officer Williams first encountered Dansby, who, by that time, had been taken to the hospital.

Officer Williams drove back to where the van had been stopped and North was detained.[1]  North was secured in the back seat of Officer Williams' police car.  Officer Williams investigated the crime that was reported to him by Dansby by

---

[1]  The search of the van qualifies as the search of a vehicle incident to an arrest.  That Officer Williams drove a short distance to check on Dansby and have him identify North and then immediately drove back to the van to search it, is not a meaningful temporal or geographical disruption to break the relationship of the van to the crime and the search for evidence of North's crime of shooting Dansby and stealing his vehicle.

searching the van for the gun used to shoot Dansby and by searching for Dansby's wallet. Officer Williams had probable cause to believe North had shot Dansby, stolen his van and wallet, and that there was evidence of these crimes in the van, which was standing unprotected alongside the road. His decision to return to the van to search for evidence of the North's crimes, for which Officer Williams had probable cause to believe North committed, was reasonable, prudent, and necessary. The search did not violate North's Fourth Amendment rights, where, as here, Defendant was legally arrested for stealing the van and shooting Dansby, a gun was not found on him when he was detained and, thus, likely was in the van.

Having reviewed *de novo* the basis for the search of the van, the Court finds that North does not have standing to challenge the search of a vehicle he stole and in which he did not have a reasonable expectation of privacy. The Court finds further that even if North were allowed to challenge the search, the search of the van and seizure of the handgun, spent shells and wallet was based on probable cause and within the vehicle exception to the warrant requirement. Gant, 556 U.S. at 343. Defendant's objection to the search of the van is overruled.

B.     North's statements

The Fifth Amendment to the United States Constitution prohibits the use of an involuntary confession against a defendant in a criminal trial. Dickerson

v. United States, 530 U.S. 428, 433 (2000). The privilege against self-incrimination provided for in the Fifth Amendment is safeguarded by the requirement that a defendant in a custodial questioning first be given Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 478-79. "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The functional equivalent of questioning is an officer's use of "any words or actions . . . (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301.[2]

"Voluntary and spontaneous comments by an accused . . . are admissible evidence if the comments were not made in response to government questioning." United States v. Sanders, 315 F. App'x 819, 823 (11th Cir. 2009) (quoting Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991)). The absence of Miranda warnings does not preclude the admission of a spontaneous statement.

---

[2] The Innis inquiry "focuses primarily upon the perceptions of the suspect." Id. at 301. See United States v. McKenzie, 132 F. App'x 788 (11th Cir. 2005) (police officer's conversation advising defendant that marijuana and cocaine were found in his room was not functional equivalent of interrogation when defendant responds); United States v. Hurst, 228 F.3d 751 (6th Cir. 2000) (Miranda warnings not required when law enforcement told defendant "we've got good information on you."); United States v. Payne, 954 F.2d 199 (4th Cir. 1992) (statement to suspect that gun was found at his house, to which suspect responded, not interrogation).

United States v. Jules, 244 F. App'x 964, 972 (11th Cir. 2007); United States v. Glen-Archila, 677 F.2d 809, 814-15 (11th Cir. 1982).

North seeks to suppress one statement. The statement was in response to Officer Williams' direction that North get out of the van on lie on the ground. Defendant did not comply and instead said: "What the f[ ] did you pull me over for? I did not do anything." North seeks to suppress this statement on the grounds that the stop and his detention were unlawful. (Obj. at 2).

The record here supports that when the statement was made, North was not in custody and that North voluntarily made the statement, not in response to a question. The Court determined earlier in this Order that Officer Williams had reasonable suspicion and probable cause to stop North and the van he was driving. Because the probable cause included Officer Williams' understanding that North had shot Dansby and continued to possess the gun, Officer Williams immediately went after the van, stopped the van, ordered North out of the van, and directed North to lie on the ground. Officer Williams did not ask North any questions; he gave North a verbal directive to get out of the van and lie down. North chose then to volunteer his statement.

The Court, having conducted its *de novo* review, finds that North's statement after the van was legally stopped was not in response to an interrogation. The

statement was volunteered by North without any prompting by Officer Williams. North's objection to the Magistrate Judge's finding and recommendation that the Court the statement is not required to be suppressed is overruled.  See Jules, 244 F. App'x at 972.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Jeff North's Objections to the Magistrate Judge's Report and Recommendation [67] are **OVERRULED.**

**IT IS FURTHER ORDERED** that Magistrate Judge Janet F. King's Final Report and Recommendation [63] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant Jeff North's Motions to Suppress Evidence and Statements [20] [21] are **DENIED**.

**SO ORDERED** this 1st day of September, 2017.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE